UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                              CRIMINAL CASE NO. 04-50065

            Plaintiff,

v.                              HONORABLE PAUL V. GADOLA
                                          U.S. DISTRICT JUDGE

LENELL CHILDS,

            Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

**I.     Introduction**

Defendant Lenell Childs is charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D), and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  Now before the Court is Defendant's motion to suppress evidence, filed on June 1, 2006.  A hearing on the matter was held on July 17, 2006 and the parties submitted supplemental briefing on September 25, 2006.  For the reasons stated below, Defendant's motion to suppress evidence seized by police will be denied.

**II.    Background**

On February 9, 2004, police officers from the City of Flint Police Department conducted surveillance and made a controlled purchase of cocaine at 1111 W. Court Street, Flint, Michigan.  Police believed that the residents of 1111 W. Court Street and 1107 W. Court Street, immediately adjacent dwellings, were involved in illegal drug sales.  The following day, February 10, 2004, a team of officers led by Sergeant Frank Sorensen executed a search warrant at the 1111 W. Court

Street residence. Upon arriving, the officers encountered a woman that was just leaving the target residence. The woman was identified as Samona Willis of 1107 W. Court Street.

After securing the 1111 W. Court Street residence, Sergeant Sorensen, Officer Rogelio Villarreal, and possibly one other officer then went next door to the 1107 W. Court Street residence and knocked on the door. Defendant Lenell Childs answered the door. After Sergeant Sorensen identified himself as a police officer, he asked Defendant Childs if he lived in the apartment. Defendant Childs, although he initially answered that he did not, later admitted that he had lived at that location for approximately eight months. Sergeant Sorensen then asked Defendant if he and Officer Villarreal could enter the residence and look around, to which Defendant allegedly answered that they could. As the officers were entering, Sergeant Sorensen asked Defendant if there were guns or drugs in the house. Defendant Childs told the officers that there was a gun on the bed and marijuana on a table. Once Defendant indicated there were guns and drugs in the residence, Officer Villarreal immediately secured him.

Following Defendant's instruction as to the location of the marijuana and gun, Sergeant Sorensen found a loaded gun and eighteen baggies of marijuana. The gun was sticking out from under a pillow on a bed and the eighteen baggies of marijuana, contained inside one larger bag, were located on a table. A further search led the police to seize a police scanner, a Denver Nuggets jacket, a television, and a DVD player, among other items.

Defendant has a slightly different account of the events that occurred. Defendant acknowledges that the police knocked on his door in the morning hours of February 10, 2006. Defendant distinctly recalls three police officers, one "tall guy," one "short guy," and one "black

guy," at the door when he answered. Defendant identified the "tall guy" as Sergeant Sorensen. Defendant testified that all three officers had their guns drawn when they knocked on the door. The officers then asked if there were any guns or drugs in the house, to which Defendant admittedly indicated that there were. Defendant strongly denies, however, that any officer ever asked him for consent to search the residence. Defendant also denies that he gave any consent verbally or made any gestures or movements that would indicate the officers were allowed to enter his residence.

It is undisputed that Defendant was subsequently arrested and the evidence was seized. Defendant was taken to the Flint Police Department where he was informed of his Miranda rights and agreed to waive those rights. Defendant then informed Sergeant Sorensen that the marijuana that was seized was his and that it had been for sale.

**III.     Legal Standard**

Warrantless searches are guided by *Coolidge v. New Hamshire*, 403 U.S. 443 (1971):

> [T]he most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment– subject only to a few specifically established and well delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' '[T]he burden is on those seeking the exemption to show the need for it.'

*Id.* at 454-55 (footnotes omitted).

The basic prohibition against warrantless searches does not apply in situations in which voluntary consent has been obtained from the individual whose property is searched. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). When the Government seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was freely and voluntarily

given; consent cannot be the result of coercion, force, or threat of force, explicit or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).  "The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and 'voluntariness is a question of fact to be determined from all the circumstances.' " *Ohio v. Robinette*, 519 U.S. 33, 40 (1996) (citing *Schneckloth*, 412 U.S. at 248-49).  Such consent, however, need not be reduced to writing. *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004).

**IV.    Analysis**

The issue now before the Court is whether the evidence seized should be excluded for lack of a proper search warrant or valid consent to search. *See Coolidge*, 403 U.S. at 454-55.  Both parties concede that the police did not possess a search warrant for the 1107 W. Court street residence.  While the Government seeks to rely on Defendant's alleged consent to enter and search the residence to permit the seized items to be admitted as evidence, Defendant asserts that he was never asked for, nor did he ever implicitly or explicitly grant, consent to entry or search by the officers.  Defendant maintains, therefore, that the evidence seized following the alleged illegal entry and search should be suppressed.  Considering the conflicting testimony, at its essence, this Court is now called upon to determine which account of the events that occurred on February 10, 2004 is more credible.

The Court, in assessing the credibility of witnesses appearing before it, considers many factors.  First, the Court considers the nature of the testimonial evidence, in particular, the witness's power to clearly recall the facts of the situation, the witness's ability to respond to counsel's

4

questions regarding the facts, and the overall consistency of the facts provided. Internal consistency as well as external consistency must also be evaluated, that is, the conjugation of one witness's account with that of another. Adding to the analysis, the Court must assess the elapsed time since the recalled events, the specificity with which the witness is called upon to describe the events, and the witness's motivation for the testimony. A determination of credibility is also affected by visual cues taken from the witness during testimony. The Court relies on the observations as to the witness's overall appearance and conduct. Such observations include, but are not limited to, the witness's eye contact; facial, hand, and body movements; vocal inflection; and overall demeanor.

Knowing that the voluntariness of consent is a question of fact to be determined from all the circumstances, *Schneckloth,* 412 U.S. at 227, after a thorough consideration of the testimonial evidence presented in the instant case, this Court finds the Government's account of the events of February 10, 2005 to be more credible. The Court finds that the officers approached 1107 W. Court Street without a warrant, Sergeant Sorensen knocked on the door, and Sergeant Sorensen then spoke with Defendant. Although Defendant could have refused by "simply standing pat, saying 'no', or closing the door," *Carter*, 378 F.3d at 588, the Court finds that during this brief conversation, Defendant freely and voluntarily, without coercion or a threat of force, gave police permission to come inside and search the residence. *See Rodriguez*, 497 U.S. at 181; *Schneckloth*, 412 U.S. 218. After Defendant told the officers that drugs and a gun were present, he instructed the officers where those items could be found. Consequently, Sergeant Sorensen found, and legally seized, a loaded handgun and eighteen baggies of marijuana. Although Defendant's consent to search was not reduced to writing, the Court finds that in the instant case the Government has met its burden of

demonstrating that Defendant's verbal consent, although ultimately ill-advised in this situation, was freely and voluntarily given. As a result, the evidence subsequently seized by the officers need not be suppressed.

**ACCORDINGLY**, **IT IS HEREBY ORDERED** that Defendant's motion to suppress evidence [docket entry 16] is **DENIED**.

**SO ORDERED.**

Dated:   October 25, 2006                              s/Paul V. Gadola
                                                       HONORABLE PAUL V. GADOLA
                                                       UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   October 26, 2006  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:   David A. Koelzer; Michael A. Tesner  , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                               .

                                                       s/Ruth A. Brissaud
                                                       Ruth A. Brissaud, Case Manager
                                                       (810) 341-7845